UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEGAN COOK and SHEENA WILLIAMSON, <br><br> Plaintiffs, <br><br> v. <br><br> KAREN YARBROUGH, in her individual capacity, WILLIAM VELAZQUEZ, in his individual capacity, COOK COUNTY RECORDER OF DEEDS OFFICE, and COOK COUNTY, <br><br> Defendants. | 18 C 4583 |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants Karen Yarbrough ("Yarbrough"), William Velazquez ("Velazquez"), the Cook County Recorder of Deeds Office ("Recorder's Office"), and Cook County's (collectively, "Defendants") motion for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, the Court grants the Motion.

## BACKGROUND

The following facts are from the record and are undisputed unless otherwise noted.

A. **Background Facts**

The Recorder's Officer is responsible for recording, storing, and maintaining land records and other official documents for public and private use. Defendant Yarbrough was elected as the Cook County Recorder of Deeds in November 2012. She served in this position from December 2012 until December 2018. Yarbrough is currently the Cook County Clerk. Defendant Velazquez served as the Chief Deputy Recorder, the second highest position in the Recorder's Office, from December 2012 until October 2013.

Plaintiff Megan Cook ("Cook") worked in the Recorder's Office as Executive Assistant to the Labor Counsel from May 2013 until sometime in 2017. Similarly, Plaintiff Sheena Williamson ("Williamson") was Executive Assistant to the Deputy Recorder for Finance from June 2013 until November 2016. Cook and Williamson (collectively, "Plaintiffs") allege that they were discriminated against by Yarbrough and Velazquez because of the use of political factors in the hiring of Erica Sanchez ("Sanchez") as Velazquez's Executive Assistant, and in the setting of Plaintiffs' and Sanchez's salaries.

It is significant to note that neither Cook nor Williamson applied for the higher paying position occupied by Sanchez. Notwithstanding their consistent complaints about the pay discrepancies between their positions and that of Sanchez, the differences in duties between their positions and the office Sanchez occupied is basically ignored by Plaintiffs. Equally ignored is the county-wide grade and pay structure applicable to

all employees based essentially on the relative importance ascribed to the duties of the grade and positions described. Succinctly stated, the comparisons made to Sanchez by the Plaintiffs are not to a similarly situated employee.

### B. The Parties' Political Affiliations

In addition to her position as the Recorder of Deeds, Yarbrough was an elected Committeeperson of the Proviso Township Democratic Organization. Yarbrough and Velazquez met in the early 2000s when Yarbrough was a state legislator and Velazquez was a lobbyist. Velazquez served as Yarbrough's co-campaign manager and was asked to be the Chief Deputy Recorder after Yarbrough was elected. Velazquez says that he had no affiliation with the Proviso Township Democratic Organization. But Plaintiffs maintain that he must have been involved with the organization, otherwise he would have been the only member of Yarbrough's executive staff that was not affiliated with it.

In October 2012, Yarbrough attended Sanchez's wedding. Sanchez says that Yarbrough may have been a guest of her father-in-law. Sanchez says Yarbrough and her father-in-law are "friends from the community" but are not close friends. Also, Sanchez's husband and father-in-law own a banquet hall called Mariella's Banquets. Yarbrough and her husband have hosted multiple political events at Mariella's Banquets throughout her political career. Although Sanchez says she does not recall attending any political events hosted by Yarbrough at Mariella's Banquets, Plaintiffs say that Sanchez has been photographed at such events.

3

Additionally, both Sanchez and Yarbrough personally know the Mayor of Hillside, Illinois, Joe Tamburino. Yarbrough and her husband have contributed to Tamburino's political party, the Hillside Independent Party. Sanchez also made contributions to Tamburino's party prior to her employment at the Recorder's Office.

Plaintiffs assert that they were not politically affiliated with Yarbrough, Velazquez, the Proviso Township Democratic Organization, or any other organization affiliated with Yarbrough. Plaintiffs contend that Yarbrough and Velazquez knew of Plaintiffs' non-affiliation because it would have been part of the hiring process and because it would have been revealed during investigations by the Office of the Independent Inspector General ("Inspector General").Interestingly, though, Williamson admits that she attended a political event that Yarbrough also attended.

### C. Hiring Procedures at the Recorder's Office

The Recorder's Office is subject to the Supplemental Relief Order issued as part of the *Shakman* litigation, which prohibits unlawful political discrimination for certain positions within the Cook County government. *See Shakman v. Clerk of Cook County*, 2021 WL 1437195, at *1–2 (7th Cir. 2021) (discussing the history of the *Shakman* litigation and consent decrees). The Recorder's Compliance Administrator ("RCA") is an independent office that ensures the Recorder's Office's compliance with *Shakman* by reviewing hiring decisions. The Recorder's Office drafted an employment plan to comply with *Shakman*. Certain policy making positions, such as the Chief Deputy Recorder, were exempt from the requirements of *Shakman* and could be filled for

4

political reasons. The positions at issue, Executive Assistants, are non-exempt positions and may not be filled for political reasons.

When it is determined that a position needs to be filled, a job description is created and publicly posted for 14 days. The job posting includes a salary range, Grade 9 through 24, assigned by the County. Candidates are then interviewed by an interview panel. The Recorder's Office employment plan allowed for certain positions, including Executive Assistant positions, to be filled through an expedited process that bypasses the interview panel if the selected candidate meets the minimum qualifications for the position. Plaintiffs and Sanchez were hired through this expedited process.

### D. Plaintiffs' Hiring and Employment at the Recorder's Office

When Cook and Williamson were hired, their positions were assigned to the Grade 18 pay level and the salary range was $46,476 - $75,017. Plaintiffs' starting salaries were the lowest end of the range, $46,476. Chloe Pederson, the Labor Counsel, and Cedric Giles, the Deputy Recorder of Finance, wrote intra-office memoranda formally announcing Plaintiffs' hiring. Plaintiffs say that the memoranda were circulated to Felix Babatunde ("Babatunde"), who was the Human Resources Director, and Yarbrough.

Cook's job responsibilities included assisting the Labor Counsel in the preparation of documentation for investigations of employee misconduct, employees' disciplinary and grievance proceedings, and leave requests under the Family and Medical Leave Act ("FMLA"). Williamson's job responsibilities included attending

meetings on behalf of the Deputy Recorder of Finance, preparing reports and presentations, and coordinating projects among multiple departments. Williamson says she also performed tasks outside her primary job responsibilities including processing refunds in the Accounting Department. In July 2015, Williamson submitted a request for a salary increase to her supervisor because of the extra work she performed, which was denied. As a result, Williamson was directed to no longer assist with refund processing.

### E. Sanchez's Hiring and Employment

When Velazquez first started as Chief Deputy Recorder, he received permission from Yarbrough to hire an Executive Assistant. According to Defendants, Velazquez told Yarbrough that he was interviewing people for the position, but he does not recall the specific details on how Sanchez was selected or what process was used. Velazquez says that he reviewed applications as they came in. Additionally, Velazquez admits that he met with Sanchez at some point and encouraged her to apply for the position. Velazquez's intra-office memorandum officially hiring Sanchez was circulated on February 26, 2013. Plaintiffs contend that Sanchez applied for the position before the position was publicly posted and that her hiring paperwork was completed before she was officially hired, which, according to Plaintiffs, shows something nefarious was afoot.

Sanchez's position was assigned to the Grade 20 pay level with a salary range of $56,172 to $90,218 per year. Velazquez set Sanchez's salary at $70,308 per year.

6

Plaintiffs contend Sanchez was given an opportunity to negotiate her salary. Defendants assert that Sanchez was not given this opportunity, but Sanchez instead let the Recorder's Office know how much she wanted to make on her own initiative. Her request was approved because of her education level and experience.

Sanchez's job responsibilities involved working with other County agencies such as offices under the Cook County President and Cook County Commissioners, and assisting the Chief Deputy Recorder in dealing with labor issues, finance issues, and operations.

Based on these facts, Plaintiffs filed a complaint in this Court alleging political discrimination in violation of the First Amendment by Yarbrough, Velazquez, and the Recorder's Office and a claim for indemnification against Cook County. Defendants now move for summary judgment under Federal Rule of Civil Procedure 56.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (cleaned up). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (cleaned up).

In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016). The nonmovant "must go beyond the pleadings" to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict in [their] favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). And "[c]onclusory statements, not grounded in specific facts" cannot defeat a motion for summary judgment. *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) (cleaned up).

## DISCUSSION

To establish a prima facie case of employment discrimination based on political affiliation, Plaintiffs must show: (1) that their conduct was constitutionally protected; and (2) that their protected conduct was a motivating factor in the challenged employment action. *Bisluk v. Hamer*, 800 F.3d 928, 933 (7th Cir. 2015). Defendants do not contest that Plaintiffs' conduct was constitutionally protected. Thus, the issue is whether Plaintiffs' political non-affiliation was a motivating factor in the setting of their salary.

Defendants argue that Plaintiffs cannot succeed on their political discrimination claims because Yarbrough and Velazquez were not personally involved in the alleged constitutional deprivation, Yarbrough and Velazquez did not have knowledge of

8

Plaintiffs' political non-affiliation, there is no evidence that political non-affiliation was a factor in setting Plaintiffs' salaries, and Defendants had legitimate non-discriminatory reasons for setting the Plaintiffs' salaries. We address each argument in turn.

## I. Evidence of Personal Involvement

A threshold question is whether Yarbrough and Defendants were personally involved in the alleged constitutional deprivation. "For a defendant to be liable under [Section] 1983, he or she must have participated directly in the constitutional violation." *Hildebrandt v. Ill. Dept. of Natural Resources*, 347 F. 3d 1014, 1039 (7th Cir. 2003). Personal involvement can be shown if the defendant knew about the conduct "and facilitated, approved, condoned, or turned a blind eye to it." *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010).

Plaintiffs contend that Yarbrough and Velazquez must have been involved in their hiring and the setting of their salary because of the hiring memoranda sent by Pederson and Giles, and because all decisions go up the chain of command.

Plaintiffs, however, do not support their contentions with any evidence that Yarbrough or Velazquez had any personal involvement. Yarbrough and Velazquez did not interview Plaintiffs or set their salary. The salaries of Plaintiffs, as well as Sanchez, were set at grades predetermined by the County. Dkt. # 68-6, at 58:23-59:3; Dkt. # 68-8, at 55:10-19. While Yarbrough may have generally known that Plaintiffs and Sanchez were hired, there is no evidence that she knew, facilitated, or condoned of any disparities in the hiring process or setting of salaries. Additionally, while Velazquez

9

set Sanchez's salary, there is no evidence that Velazquez even knew about Plaintiffs' hiring. Thus, there is no evidence that Yarbrough or Velazquez had personal involvement in any constitutional deprivation. Therefore, Plaintiffs claims fail. *See Lauderdale v. Ill. Dep't of Human Servs.*, 210 F. Supp. 3d 1012, 1020 (C.D. Ill. 2016) (granting summary judgment in a Section 1983 case because there was "no competent evidence that Governor Quinn had any personal involvement in the Plaintiff's salary decision").

## II. Knowledge of Non-Affiliation

Defendants next argue that Plaintiffs do not present evidence that Yarbrough and Velazquez "even knew about" their political affiliations, or lack thereof. *See Zerante v. DeLuca*, 555 F.3d 582, 585 (7th Cir. 2009).

Plaintiffs spill buckets of ink to argue that Defendants knew about Sanchez's political affiliations. However, Plaintiffs' arguments and evidence of Defendants' knowledge of *their* political affiliation are lacking. Plaintiffs admit that they never had a conversation with Yarbrough or Velazquez regarding their non-affiliation. Dkt # 68-2, at 104: 2-5; Dkt. # 68-4, at 77:44-14. Cook also testified that she did not notify her superiors of her non-affiliation to Yarbrough and Velazquez, while Williamson testified that she did not recall whether she notified her superiors of her non-affiliation. Dkt. # 68-2, at 104: 17-20; Dkt. # 68-4, at 77: 15-18.

Plaintiffs also argue that Yarbrough and Velazquez must have known about their non-affiliation through the hiring process. For example, they say that the RCA would

10

have noted that they were not politically affiliated with Yarbrough and Velazquez and that Yarbrough and Velazquez must have learned this. Dkt. # 68-2, at 105:24-106:4. Plaintiffs also say that Defendants must have known because of Inspector General investigations done in the year they were hired. Dkt. # 68-4, at 175: 3-17.

These arguments, however, rely on speculation that Yarbrough and Velazquez must have know about their political non-affiliation. There is no evidence that could lead a reasonable jury to find that Yarbrough and Velazquez knew of Plaintiffs' non-affiliation at the time Plaintiffs were hired and their salaries were set. Therefore, Plaintiffs' claims also fail for this reason. *See McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003) ("'mere speculation or conjecture' will not defeat a summary judgment motion").

### III.  Non-Affiliation as a Motivating Factor

Defendants next argue that Plaintiffs cannot show that their political non-affiliation was a motivating factor in their hiring process and the setting of their salaries.

Plaintiffs again spill heaps of ink to argue that Sanchez's hiring was based on her political affiliation to Yarbrough and Velazquez. However, Plaintiffs make no arguments that *their* hiring or the setting of *their* salary was based on impermissible political factors.

Despite this, Plaintiffs' argument appears to be that, similar to a Title VII discrimination case, they were discriminated against because Sanchez had a

11

substantially similar job to Plaintiffs, but Sanchez received a higher salary due to inappropriate political considerations while Plaintiffs did not.

Plaintiffs, though, did not apply for the same job as Sanchez. Instead they applied to jobs that were already set at a lower pay grade. Additionally, Sanchez's job is not a proper comparison for Plaintiffs' job. "Similarly situated means 'directly comparable' in all material respects." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 895 (7th Cir. 2018). "The proposed comparator need not be identical in every conceivable way, however, and courts must conduct a common-sense examination," which asks, "are there enough common features between the individuals to allow a meaningful comparison?" *Id.* (cleaned up). Factors to be considered include "whether the employees being compared (1) were supervised by the same person, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (cleaned up).

While there are some general similarities between each Executive Assistant position, there are important differences between the positions. For example, each position reports to a meaningfully different person within the Reporter's Officer. Sanchez's position reported directly to the Deputy Recorder, the second highest position in the Recorder's Officer. Plaintiffs, on the other hand, reported to officials below the Chief Deputy Recorder, who in turn reported to the Chief Deputy Recorder. Additionally, Sanchez's position required her to communicate with other high-level

government officials, including officials from the County President's Office and County Commissioners' office, and attending meetings on behalf of the Chief Deputy Recorder, while Plaintiffs' positions did not. Simply put, the job of an assistant to a high-level executive necessarily entails job duties different from an assistant to a lower-level executive. Thus, any differences in pay grade, which were set by the County and not the Recorder's Office, were not based on any nefarious political reasons

Indeed, there is no evidence that any political considerations at all were used in the setting of Plaintiffs' salaries. Plaintiffs have failed to show that any favorable treatment Sanchez may have received received due to political connections prejudiced the terms of their employment or violated their constitutional rights.

We therefore conclude that no reasonable jury could find that Plaintiffs were discriminated against because of their political non-affiliation to Yarbrough and Velazquez. Plaintiffs simply cannot show that Yarbrough and Velazquez were personally involved in their hiring, knew about their political non-affiliation, or that the setting of their salaries was based on impermissible political factors. Because there is no underlying constitutional deprivation, there is no liability against the Recorder's Office or Cook County. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010) ("a municipality cannot be held liable . . . when there is no underlying constitutional violation by a municipal employee").

Accordingly, the Court grants Defendants' motion for summary judgment.

13

## **CONCLUSION**

For the reasons mentioned above, the Court grants Defendants' motion for summary judgment (Dkt. 66). Judgment entered. Civil case terminated. It is so ordered.

Dated: 05/05/2021

Charles P. Kocoras
United States District Judge